# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303



John Ley
Clerk of Court

December 12, 2013

For rules and forms visit
www.ca11.uscourts.gov

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 12-15222-DD
Case Style: Juan Velazquez v. South FL Federal Credit Union
District Court Docket No: 1:12-cv-22505-FAM

The enclosed judgment is hereby issued as the mandate of this court.

The record on appeal will be returned to you at a later date.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Tonya L. Richardson
Phone #: (404) 335-6176

Enclosure(s)

MDT-1 Letter Issuing Mandate

UNITED STATES COURT OF APPEALS
For the Eleventh Circuit

_____

No. 12-15222
_____

District Court Docket No.
1:12-cv-22505-FAM

JUAN VELAZQUEZ,

                Plaintiff - Counter Claimant - Appellant,

CARIDAD MARQUEZ,

                Plaintiff - Counter Claimant,

versus

SOUTH FLORIDA FEDERAL CREDIT UNION,

                Defendant - Counter Defendant - Appellee,

JASON NOEL,
Purchaser of the Property,

                Defendant.

_____

Appeal from the United States District Court for the
Southern District of Florida
_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: November 12, 2013
For the Court: John Ley, Clerk of Court
By: Jeff R. Patch

Issued as Mandate:
December 12, 2013

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15222
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-22505-FAM

JUAN VELAZQUEZ,

                                Plaintiff-Counter Claimant-Appellant,

CARIDAD MARQUEZ,

                                Plaintiff-Counter Claimant,

versus

SOUTH FLORIDA FEDERAL CREDIT UNION,

                                Defendant-Counter Defendant-Appellee,

JASON NOEL,
Purchaser of the Property,

                                Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 12, 2013)

Before WILSON, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Juan Velazquez, proceeding pro se, appeals the district court's dismissal of his civil case. This case began when South Florida Federal Credit Union (SFFCU) sued Velazquez in the Eleventh Judicial Circuit of Miami-Dade, Florida. The state trial court granted SFFCU's motion for summary judgment, and Florida's Third District Court of Appeal affirmed. Velazquez then filed a notice of removal to federal court. The federal district court dismissed the case for failure to comply with Southern District of Florida Local Rule 7.1(c) and for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine.[1] Velazquez now appeals, arguing that we should reverse the federal district court's dismissal and vacate the state court's grant of summary judgment. We affirm the district court and deny SFFCU's requests to sanction Velazquez and order him to pay costs.[2]

A court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3). When it applies, the *Rooker-Feldman* doctrine deprives federal courts of subject-matter jurisdiction

---

[1] The *Rooker-Feldman* doctrine derives from *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415–16, 44 S. Ct. 149, 150 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476–82, 103 S. Ct. 1303, 1311–15 (1983).

[2] SFFCU argues, *inter alia*, that we should order Velazquez to pay its costs and expenses associated with the removal, pursuant to 28 U.S.C. § 1447(c), and that we should determine that the appeal is frivolous so that SFFCU may pursue damages and costs under Federal Rule of Appellate Procedure 38. Because Velazquez is proceeding pro se, and because an award of costs and expenses is otherwise inappropriate in this case, we deny SFFCU's requests.

2

over cases the courts would usually have the power to adjudicate. *Vasquez v. YII Shipping Co.*, 692 F.3d 1192, 1195 (11th Cir. 2012).

The district court's dismissal for failure to comply with Local Rule 7.1(c) is a dismissal on the merits. *See* Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision . . . operates as an adjudication on the merits."). Because "[j]urisdiction is a prerequisite to the legitimate exercise of judicial power," we determine whether the district court had jurisdiction over a case following removal "as a threshold matter." *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 779 (11th Cir. 2005). Accordingly, we must first address whether the district court properly dismissed this case for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine, proceeding to analyze the district court's dismissal for failure to comply with Local Rule 7.1(c) only if *Rooker-Feldman* does not apply.

We review de novo a district court's conclusion that it lacks subject matter jurisdiction based on the *Rooker-Feldman* doctrine. *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam). The *Rooker-Feldman* doctrine "bars federal district courts from reviewing state court decisions" in certain, limited circumstances. *Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291, 125 S. Ct. 1517, 1526 (2005).

3

Prior to the Supreme Court's decision in *Exxon Mobil*, this circuit had traditionally applied a four-factor test to guide application of the *Rooker-Feldman* doctrine. *See Amos v. Glynn Cnty. Bd. of Tax Assessors*, 347 F.3d 1249, 1265 n.11 (11th Cir. 2003).[3] However, due to the Supreme Court's cautionary statement in *Exxon Mobil* that the *Rooker-Feldman* doctrine "has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases," 544 U.S. at 283, 125 S. Ct. at 1521, we have since declined to adhere to the *Amos* test. *See Nicholson*, 558 F.3d at 1274 (electing to apply *Exxon Mobil*'s strict language confining the doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments" as opposed to the *Amos* test (internal quotation marks omitted)).

Instead, we determine whether *Rooker-Feldman* applies in two stages. First, we must determine whether state court proceedings have ended, which we do by applying the three tests articulated by the First Circuit and adopted by this court in *Nicholson*. *See id.* at 1275 (citing *Federación de Maestros de P.R. v. Junta de*

---

[3] *Amos* applied the following four-factor test to determine whether the district court lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine:
> (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment.

*Id.* (citations omitted).

4

*Relaciones del Trabajo de P.R.*, 410 F.3d 17, 24–27 (1st Cir. 2005)).  Second, we consider whether the Appellant is a "state-court loser[] complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284, 125 S. Ct. at 1521–22.  In making this determination, this court has continued to apply the fourth factor of the *Amos* test, evaluating whether the plaintiff's claims are "inextricably intertwined" with the state court judgment.  *See Casale*, 558 F.3d at 1260.

We begin by addressing whether Velazquez's state court proceedings had ended for *Rooker-Feldman* purposes under any of the three tests articulated in *Nicholson*.  Cases in state court have ended:

> (1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, (2) if the state action has reached a point where neither party seeks further action, and (3) if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated.

*Nicholson*, 558 F.3d at 1275 (internal quotation marks omitted).

In this case, the first test has not been satisfied.  Under Florida Rule of Appellate Procedure 9.030(a)(2)(A), the Florida Supreme Court has discretionary jurisdiction over the case.  The highest state court to affirm the trial court in this case was the Third District Court of Appeal, meaning that the highest state court available did not affirm the judgment below.  Likewise, the third test has not been satisfied here because Velazquez continues to litigate both federal and state issues.

5

The state court proceedings have nevertheless ended for *Rooker-Feldman* purposes because the second test under *Nicholson* has been satisfied. In *Federación*, the First Circuit provided an example to illustrate when the second test would be satisfied: "For example, if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended." 410 F.3d at 24. In *Nicholson*, we held: "Conversely, logic dictates that if a state court issues a judgment and the losing party (here, the Appellants) does not allow the time for appeal to expire (*but instead, files an appeal*), then the state proceedings have not ended." *Nicholson*, 558 F.3d at 1275 (emphasis added).

Neither example is directly applicable to this case. Though Velazquez did not allow the time for appeal to expire, he also did not actually file an appeal in state court.[4] Thus, there was *potential* for an appeal to be filed in state court while the case was pending in the district court, though that potential vanished without materializing into actual parallel state-federal litigation by the time the district court dismissed the case.[5] Despite this potential, *Exxon Mobil* and the wording of

---

[4] Under Florida Rule of Appellate Procedure 9.120(b), the time limit to file for discretionary review by the Florida Supreme Court is 30 days. That time began running on June 8, 2012 when Velazquez's motion for rehearing in state court was denied. This was the final action taken in state court. On July 6, 2012, Velazquez filed a notice of removal to the federal district court for the Southern District of Florida, before the 30-day limit to continue his state court litigation had run.

[5] The district court dismissed the claim on September 26, 2012, well after the 30-day deadline to appeal to the Florida Supreme Court from the Third District Court of Appeal's order on June 8, 2012.

the second test suggest that state court proceedings had ended for *Rooker-Feldman* purposes in this case.

In *Exxon Mobil*, the Court reminded lower courts that *Rooker-Feldman* only applies to cases brought by those "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced . . . ." 544 U.S. at 284, 125 S. Ct. at 1521–22. In this case, all state court judgments were rendered before the district court proceedings commenced. The Supreme Court cautioned that *Rooker-Feldman* does not apply when "there is parallel state and federal litigation," and that "the pendency of an action in state court" precludes application of *Rooker-Feldman*. *See Exxon Mobil*, 544 U.S. at 292, 125 S. Ct. at 1526–27 (internal quotation marks omitted). Because there was nothing pending in state court at the time district court proceedings began, nor was anything filed in state court after that time, there was never parallel litigation in this case.

Moreover, *Federación*'s second test requires that litigation "reach[] a point where neither party seeks further action" before declaring state litigation ended for *Rooker-Feldman* purposes. 410 F.3d at 24. The court noted, however, that litigation is not ended "even if the federal plaintiff expects to lose in state court and hopes to win in federal court . . . ." 410 F.3d at 24. Here, we are not dealing with a federal plaintiff who expected to lose in state court; instead, we are dealing with a federal plaintiff who had lost and given up in state court, albeit before he was time-

7

barred from changing his mind. *See Ware v. Polk Cnty. Bd. of Cnty. Comm'rs*, 394 F. App'x 606, 609 (11th Cir. 2010) (per curiam) ("Ware had no intention of appealing the judgment to a state appellate court, preferring instead 'to go straight to federal' court. Because no appeal remained pending at the time Ware commenced this federal action, the state proceedings were ended for purposes of the *Rooker-Feldman* doctrine."). Concluding that state court proceedings ended despite the potential for parallel litigation does not run afoul of the Supreme Court's guidance in *Exxon Mobil*, and therefore, we proceed to the second stage in our *Rooker-Feldman* analysis.

We next consider whether Appellant is a "state-court loser[] complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284, 125 S. Ct. at 1521–22. *Rooker-Feldman* may bar federal jurisdiction even where federal claims were not fully addressed by the state court so long as "those [federal claims were] inextricably intertwined with the state court's judgment. [*Rooker-Feldman*] does not apply, however, where a party did not have a reasonable opportunity to raise his federal claim in state proceedings." *Casale*, 558 F.3d at 1260 (citations and internal quotation marks omitted). "A claim is inextricably intertwined if it would effectively nullify the state court judgment, or [if] it [would] succeed[] only to the

8

extent that the state court wrongly decided the issues." *Id.* (citations and internal quotation marks omitted).

Velazquez had an opportunity to raise his federal claims below, and the federal claims he asserts are inextricably intertwined with state court judgments. Velazquez alleges that he was denied the opportunity for a fair trial in violation of the Seventh Amendment and other federal civil rights; in reality, he objects to the trial court's order granting summary judgment for SFFCU. He alleges that he was denied Fifth Amendment rights arising from seizure of certain property; in reality, he objects to the trial court's rejection of various statutory claims for unfair debt collection practices. He alleges fraud upon the court; in reality, he objects because the state appellate court was not persuaded by his evidence of fraud and because it did not sanction opposing counsel. In short, Velazquez is seeking reversal of the state courts' decisions. Velazquez makes this perfectly clear in his brief: "This is an action to vacate Summary Judgment Procured by fraud, fabricated evidence, and illegal debt collection without assignment, unlawful noncommercial repossession and sale. Appellant request [sic] dismiss the case." The district court did not have jurisdiction to grant this request because the state court addressed these concerns.

Next, Appellant argues for an exception to the *Rooker-Feldman* doctrine because he is "not really complaining of an injury caused by a state-court

9

judgment, but of an injury caused by winner's chicanery."  In essence, Velazquez asks this court to recognize a fraud-on-the-court exception to *Rooker-Feldman*. *See In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986) ("There is, however, an exception to the general rule that precludes a lower federal court from reviewing a state's judicial proceedings.  A federal court may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake . . . ." (internal quotation marks omitted)).  As a preliminary note, this case comes from the Sixth Circuit, and "[u]nder the established federal legal system the decisions of one circuit are not binding on other circuits."  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).  More importantly, even if we were to adopt the exception Velazquez seeks, it would not apply here.  Velazquez presented evidence of fraud to Florida's Third District Court of Appeal, and that court was unconvinced by the evidence.  Fraud on the court does not occur simply because a court is unpersuaded by a party's allegation of fraud, and that is all Velazquez suggests happened here.

Because state court proceedings ended prior to Velazquez's appeal to the district court and because the claims raised were inextricably intertwined with claims raised in state court, the district court properly concluded that *Rooker-Feldman* deprived it of jurisdiction.  The exception to *Rooker-Feldman* that Velazquez seeks has not been recognized by this circuit and would be inapplicable

10

to this situation even if it were recognized.  Therefore, the district court correctly dismissed the case for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine.  Consequently, we need not address the district court's dismissal on the merits for failure to comply with local court rules.

    **AFFIRMED.**